CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 09 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONALD LEE HINTON, | ) | Civil Action No. 7:14-cv-00197 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| NURSE O'CONNOR, et al., | ) | By: Hon. Michael F. Urbanski |
| Defendants. | ) | United States District Judge |

Donald Lee Hinton, a Virginia inmate proceeding pro se, commenced this civil action pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants the Commonwealth of Virginia, Pocahontas Correctional Center ("PCC"), and the following PCC staff: Nurses O'Connor, Booth, Malingalin, Sheybani, Headly, Lockhart, Strawberry, and Yates; correctional officers Anderson, Wade, Profit, Sizemore, Buckles, Alford, Hastings, Cabwell, Howard, Mullen, Neal, Thornton, Watts, and Bandy; and Psychologist Bland. The court warned Plaintiff that the complaint failed to state a claim and granted Plaintiff the opportunity to amend. Presently before the court is Plaintiff's amended complaint seeking $7.4 million dollars. After reviewing the amended complaint pursuant to 28 U.S.C. § 1915A, the court dismisses all claims except for claims 1(III), (VII), and (VIII) for failing to state a claim upon which relief may be granted.[1]

The court must dismiss a claim filed by an inmate if the court determines that the claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level" to state a claim upon which relief may be granted. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

---

[1] Claims 1(III), (VII), and (VIII) remain pending with the court.

Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim."[2] Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Plaintiff presents seven main enumerated claims against defendants, and for organization and convenience, the court addresses each in turn as numbered by Plaintiff. However, the court notes at the outset that neither the Commonwealth of Virginia nor PCC are proper defendants in this action and that a failure by state officials to follow state policies and procedures does not by itself state a federal due process claim. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); United States v. Caceres, 440 U.S. 741 (1978); Riccio v. Cnty. of Fairfax, 907 F.2d 1459 (4th Cir. 1990); McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890 (E.D. Va. 1992). Furthermore, staff's verbal harassment, including racial epithets and idle threats, do not constitute a violation of federal law even if it causes an inmate fear or emotional anxiety. See, e.g., Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989). Moreover, a claim based on labels and conclusions is not entitled to an assumption of truth. Twombly, 550 U.S. at 555. Accordingly, claims based on contrary arguments are dismissed.

## I.
## A.

In claims 1(I) and 1(II), Plaintiff complains about the alleged acts and omissions by Officer Anderson when Plaintiff began having a heart attack on June 30, 2011. In claim 1(III), Plaintiff alleges that on May 28, 2012, Officers Anderson and Mullen placed shackles, a shockbelt, and handcuffs too tightly on Plaintiff, causing "excruciating pain making it extremely

---

[2] Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Although the court liberally construes pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the court does not act as an inmate's advocate, sua sponte developing statutory and constitutional claims not clearly raised in a complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

hard to breathe." Officers Anderson, Mullen, and Profit refused Plaintiff's requests to loosen the restraints.

In claim 1(IV), Plaintiff complains that when a nurse asked Officer Anderson to leave the room due to overcrowding, Officer Anderson refused and spoke rudely to the nurse. In claim 1(V), Officers Anderson, Mullen, and Profit refused to loosen Plaintiff's restraints when he needed to urinate. While attempting to urinate in a container, Plaintiff urinated on himself, and Officer Anderson made "unprofessional jokes and gestures." In claim 1(VI), Plaintiff felt threatened when Officer Anderson said, "Watch out, Hinton, I almost shot you," when Plaintiff's shackles rattled as he returned to his bed. In claim 1(VII), Officers Anderson, Mullen, and Profit refused to loosen Plaintiff's restraints so Plaintiff could consume six graham crackers and orange juice given to him by a doctor to raise his blood sugar. These defendants continued their refusal even after Plaintiff warned them that he was a diabetic and "would go into diabetic shock" without the snack. In claim 1(VIII), Plaintiff alleges he experienced physical injury via "severe chest pains" that necessitated receiving a nitroglycerin pill for calm him down due to Officers Anderson, Mullen, and Profit's refusal to help Plaintiff consume the snack. In claim 1(IX) and 1(X), Plaintiff argues that the acts and omissions of Officers Anderson, Mullen, and Profit constituted the unlawful practice of medicine and violated the Eighth Amendment.

**B.**

1. <u>Claims 1(I) and 1(II) are untimely filed.</u>

Section 1983 adopts the statute of limitations that the forum state uses for general personal injury cases. <u>Owens v. Okure</u>, 488 U.S. 235, 249-50 (1989). Virginia's applicable statute of limitations for § 1983 actions is two years and may be tolled. <u>See</u> Va. Code §§ 8.01-

229, 8.01-243(A). However, federal law itself governs the question of when a cause of action accrues. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). A federal cause of action accrues when "the plaintiff has 'a complete and present cause of action'" or when the plaintiff "can file suit and obtain relief." Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997). Claims 1(I) and 1(II) accrued on June 30, 2011, which is more than two years before Plaintiff commenced this action on March 26, 2014, and he fails to establish any basis to toll the limitations period. Accordingly, claims 1(I) and 1(II) are dismissed as untimely filed. See Brooks v. City of Winston-Salem, North Carolina, 85 F.3d 178, 181 (4th Cir. 1996) (stating sua sponte dismissal is proper when the face of the complaint clearly reveals the existence of a meritorious affirmative defense).

2. Claims 1(IV)-(VI), (IX) and (X) dismissed as frivolous or for failing to state a claim.

Plaintiff fails to state a claim about not being able to urinate accurately into a container while wearing hand restraints; the jokes, threats, and "practicing medicine without a license" by the officers; and Plaintiff's conclusory accusation that the officers violated federal law. Plaintiff's claim about Officer Anderson being rude to a nurse is frivolous. See, e.g., Neitzke v. Williams, 490 U.S. 319, 327 (1989). Accordingly, claims 1(IV)-(VI), (IX) and (X) are dismissed.

3. Claims 1(III), (VII), and (VIII) remain pending before the court.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners, whether it occurs via medical care or conditions of confinement. "[A] prisoner must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" to succeed with an Eighth Amendment claim. Danser v. Stansberry, 772 F.3d

340, 346 (4th Cir. 2014) (internal quotation marks omitted). A prisoner must also establish that a defendant acted with deliberate indifference, meaning the defendant was personally aware of facts indicating a substantial risk of serious harm and that the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994); see Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (noting deliberate indifference may be demonstrated by either actual intent or reckless disregard). To succeed with an unconstitutional medical treatment claim against non-medical prison personnel, plaintiff must show that the official was personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or was deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. Miltier, 896 F.2d at 854.

Plaintiff states a plausible claim for relief in claims 1(III), (VII), and (VIII). In claim 1(III), Plaintiff alleges that on May 28, 2012, Officers Anderson and Mullen placed shackles, a shockbelt, and handcuffs too tightly on Plaintiff, causing "excruciating pain making it extremely hard to breathe." The officers allegedly did not remedy the infliction of pain after Plaintiff informed them. Consequently, Plaintiff states a plausible claim of these officers' deliberate indifference to the excessive infliction of pain without penological purpose. In claims 1(VII) and (VIII), Plaintiff experienced severe chest pains when Officers Anderson, Mullen, and Profit refused to loosen Plaintiff's restraints so Plaintiff could consume the crackers and juice given to him by a doctor to raise his blood sugar, even after Plaintiff informed these officers of the risk of going into diabetic shock without the snack. Consequently, Plaintiff states a plausible claim of these officers' personal involvement with a denial of treatment or deliberate interference with the

5

doctor's treatment of Plaintiff's diabetes. Accordingly, claims 1(III), (VII), and (VIII) against Officers Anderson, Mullen, and Profit remain pending before the court.

## II.
### A.

Officers Howard and Hastings began supervising Plaintiff in the hospital during the day after the events described in claim 1. In claim 2(I), Plaintiff alleges that Officers Howard and Hastings refused to loosen Plaintiff's restraints so Plaintiff could feed himself breakfast. Although Officer Howard fed Plaintiff the breakfast, Plaintiff complains about the messy manner in which Howard fed him. In claim 2(II), Plaintiff says he asked these officers to loosen the restraints so he could eat lunch. These officers again refused, and consequently, Plaintiff did not eat lunch. In claim 2(III), Plaintiff complains that Officers Howard and Hastings refused to give a Plaintiff a shower in the hospital after he had gone three days without bathing. Plaintiff alleges in claim 2(IV) and 2(V) that these events were so stressful and uncomfortable that his wrists became swollen although he admits he received pain killers and a nitroglycerin pill. Plaintiff concludes in claims 2(VI) and 2(VII) that Officers Howard and Hastings are liable for the conditions of his confinement.

### B.

None of these claims state a claim upon which relief may be granted. Missing one lunch meal does not constitute the deprivation of a basic human need. See, e.g., White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993) (affirming dismissal of Eighth Amendment claim about missing one meal as frivolous and indisputably meritless). Plaintiff ate breakfast, and nothing in the record supports the inference that Officers Howard and Hastings knew Plaintiff was a diabetic and allegedly needed to eat lunch to avoid the risk of diabetic shock. Furthermore, not bathing

6

for three days while hospitalized is not an unconstitutional condition of confinement. Accordingly, all of claim 2 is dismissed.

## III.
### A.

Plaintiff had a "chronic-care" medical appointment at PCC on June 4, 2012. In claim 3(I), Plaintiff complains about Nurse O'Connor's rude comments and demeanor when Plaintiff arrived for the appointment. After waiting forty-five minutes, Plaintiff became thirsty and asked Nurse O'Connor for water to drink. Officer Wade and Nurses O'Connor and Booth refused Plaintiff's three requests for water, as described in claim 3(II) and 3(III), during his eighty-minute wait. Officer Wade told Plaintiff that he could sign a "medical treatment refusal" form and return to his pod if he wanted water, and as alleged in claim 3(IV), Officer Wade refused to give Plaintiff a cup of water as punishment. Officer Sizemore spoke rudely to Plaintiff and reiterated Officer Wade's offer that Plaintiff could go back to his pod if he wanted to drink water. In claim 3(V), Plaintiff alleges that the stress of dealing with these defendants caused him chest pains, which the doctor treated with two nitroglycerin pills.

On July 5, 2012, Plaintiff told Nurse Lockhart that he had blood in his urine and stool. Plaintiff complains in claim 3(VI) that Nurse Lockhart told Plaintiff that he needed to see a doctor for diagnosis and treatment instead of treating him immediately.

Plaintiff spoke with Nurse O'Connor the next day on July 6, 2012, about seeing the doctor. Plaintiff alleges in claim 3(VII) that Nurse O'Connor "yelled" at Plaintiff and said, "All you inmates say the same thing everyday," when Plaintiff said he had an "emergency" need to see a doctor. Plaintiff chided Nurse O'Connor for that statement, and Officer Alford told Plaintiff either to leave or to keep his thoughts to himself and stay in the medical department.

7

Plaintiff replied that he can speak his mind as long as he was respectful and thought believed Officer Alford was "mean" because Plaintiff is black. Nurse O'Connor subsequently gave Plaintiff his diabetic instruments in a disrespectful manner.

When Plaintiff returned to his pod, he received notice of an institutional charge of "Vulgar and Insolent Language" due to his conversation with Nurse O'Connor and Officer Alford. Plaintiff alleges in claim 3(VIII) that Nurse O'Connor wrote the "false" charge in retaliation for Plaintiff filing a grievance about not receiving a cup of water while waiting for his medical appointment.³ Plaintiff concludes in claims 3(IX) and 3(X) that defendants' actions violate VDOC policies and federal law.

## B.

None of these claims state a claim upon which relief may be granted. Plaintiff's demand for a cup of water while waiting to see the doctor does not describe the unconstitutional deprivation of a basic human need or unconstitutional condition of confinement. The nurse's statement that Plaintiff had to see the doctor for medical diagnosis of blood in his urine and stools does not describe deliberate indifference but rather the nurse's explanation how Plaintiff could receive the medical treatment he sought. As for the disciplinary conviction, Plaintiff fails to describe any violation of an interest protected by federal law, and his conclusory allegation of retaliation is insufficient to state such a claim. See, e.g., Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993) (noting "temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a claim). Accordingly, all of claim 3 is dismissed.

---

³ As noted infra, Plaintiff was found guilty of the charge.

8

# IV.
## A.

As described in claims 4(I) and 4(II), Plaintiff had a chronic-care appointment via closed-circuit television with a doctor from the Medical College of Virginia ("MCV") on August 9, 2012. The MCV doctor told Nurse Strawberry that he wanted Plaintiff to stay at MCV for a couple of days to undergo a catheterization and cardiology stress test. After Plaintiff left the room, Nurse Yates talked to the doctor and subsequently told Plaintiff that he would be staying at the PCC medical department for the tests. Plaintiff complains in claim 4(III) that Nurse Strawberry "arrogantly" and "with racial overtones" denied Plaintiff's request to stay in his housing pod, instead of the medical department, for the tests. Plaintiff alleges in claims 4(IV) and 4(VI) that Nurses Yates, Headly, Sheybani, and Malingalin are racists. In claim 4(V), Plaintiff complains that, despite checking his vitals and giving him a nitroglycerin pill, Nurse Malingalin did not offer medical treatment of his headache and instead told Plaintiff to schedule an appointment to see a doctor, which would cost him $5.

In claim 4(VII), Plaintiff complains that Officer Cabwell's "attitude was so racist prejudice toward blacks you could hear it in his voice and see it in his behavior," like when it took Officer Cabwell fifteen minutes to get Nurse Lockhart to come to Plaintiff's cell. Nurse Lockhart checked Plaintiff's vital signs twice and gave him two nitroglycerin pills. After Plaintiff told Nurse Lockhart that he wanted to see a psychologist, Nurse Lockhart forwarded Plaintiff's request to Psychologist Bland, who replied that policy did not allow her to meet with Plaintiff while he was housed in the medical department. Consequently, Plaintiff concludes in claim 4(VIII) that he was denied mental health treatment.

9

In claim 4(IX), Plaintiff complains that Officer Cabwell refused to give Plaintiff cleaning supplies for his cell and refused Plaintiff's subsequent demands to talk with a lieutenant. Plaintiff tried to contact a lieutenant through the emergency button in the cell, but Officer Cabwell still refused to call a lieutenant. When Plaintiff objected, Officer Cabwell allegedly spoke rudely to Plaintiff with a racial epithet. Plaintiff concludes in claims 4(X) and 4(XI) that these defendants violated VDOC policies and federal law.

### B.

None of these claims state a claim upon which relief may be granted. The decision to require Plaintiff to stay in the medical department for the stress test is not deliberate indifference or an unconstitutional condition of confinement. Plaintiff fails to establish how a headache is a serious medical need, and he admits the nurse recommended that he see the doctor for diagnosis or treatment. Similarly, Plaintiff fails to describe Psychologist Bland's deliberate indifference to a serious medical need, and he further fails to describe how any delay in treatment resulted in a significant harm. Accordingly, all of claim 4 is dismissed.

### V.

In claims 5(I) through 5(III), Plaintiff complains that Officers Neal and Sizemore did not deliver his lunch tray while he slept through the noon lunch delivery, and when Plaintiff awoke at 3 p.m., his meal tray was not in his cell.[4] Plaintiff concludes that Officers Neal and Sizemore knew he was a diabetic and recovering from a heart attack and that their omission is contrary to VDOC policy and federal law.

None of these claims state a claim upon which relief may be granted. Plaintiff fails to describe how federal law requires the delivery of a meal tray to a sleeping inmate, and a failure

---

[4] Plaintiff stated these times in his related action, 7:14-cv-00392.

10

to receive one meal tray does not constitute the unconstitutional deprivation of a basic human need. See, e.g., White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993) (affirming dismissal of Eighth Amendment claim about missing one meal as frivolous and indisputably meritless). Accordingly, all of claim 5 is dismissed.

## VI.

Plaintiff did not have any hygiene supplies remaining by the end of his twenty-eight day stay in the medical department. Plaintiff complains in claims 6(I) through 6(III) that he filled out a commissary form to order soap, toothpaste, and stamps, but Officer Anderson did not retrieve the form, allegedly in violation of federal law.

None of these claims state a claim upon which relief may be granted. The temporary delay in receiving these commissary items does not constitute the unconstitutional deprivation of a basic human need or an unconstitutional condition of confinement. Accordingly, all of claim 6 is dismissed.

## VII.

Plaintiff complains in claim 7(I) through 7(VII) that PCC Hearings Officer Brandy found Plaintiff guilty of the "false" institutional charge of "Vulgar and Insolent Language" after Officer Brandy did not allow Plaintiff to call four witnesses. Plaintiff argues that the institutional conviction is a violation of federal law.

As noted previously, Plaintiff does not describe the infringement of any interest protected by federal law, and by Plaintiff's own admission, there appeared to be sufficient evidence to support the finding of guilt. See, e.g., Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985) (holding substantive due process is satisfied if the disciplinary hearing decision

11

was based upon "some evidence"). Furthermore, inmates do not have a right to confrontation and cross-examination, and such procedures are wholly within the discretion of prison officials. See, e.g., Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976) (noting due process does not require a written reason for not allowing an inmate to call a defense witness).

## VIII.

Nothing in the amended complaint except for claims 1(III), (VII), and (VIII) states a plausible claim upon which relief may be granted. Accordingly, all claims except for claims 1(III), (VII), and (VIII) are dismissed, and all defendants except Officers Anderson, Mullen, and Profit are terminated.

ENTER: This 9th day of July, 2015.

/s/ Michael F. Urbanski
United States District Judge

12